UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Darren T. Sample, | Civil Action No.: 9:17-CV-01100-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Darren T. Sample ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends affirming the Commissioner's decision. [ECF #17].

**Factual Findings and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff initially applied for disability insurance benefits ("DIB") on April 28, 2014, alleging disability beginning April 2, 2014 due to bursitis, arthritis, thrombosis, knee spurs, gout, sleep apnea, allergies, and high blood pressure. Plaintiff's claim was denied initially and upon reconsideration. After he requested and was granted a hearing, the ALJ denied his claim on February 10, 2016. Plaintiff's request for a review by the Appeals Council was denied, thereby making the determination of the ALJ the final decision of the Commissioner. On April 27, 2017, Plaintiff filed this action. After briefing by

both parties, the Magistrate Judge issued his Report and Recommendation (the "R&R"), recommending that this Court affirm the decision of the Commissioner. [ECF #17, p. 21].

As evidenced by medical records dating back to 2013, Plaintiff suffered from leg pain, venous insufficiency, edema, and deep vein thrombosis. [ECF #10-7; Ex. 1F]. Plaintiff also underwent chiropractic care due to pain in his lower back and knees. [ECF #10-8, Ex. 8F]. Plaintiff was diagnosed with obstructive sleep apnea and began using a Continuous Positive Airway Pressure ("CPAP") machine. [ECF #10-7, Ex. 5F]. Plaintiff was treated for numbness in his toes and hands, neuropathy, joint pain, hypertension, and gout. [ECF #10-10, Ex. 23F]. The medical records indicate Plaintiff was prescribed a cane for use due to knee pain. [ECF #10-7, Ex. 7F]. In denying Plaintiff's claim, the ALJ determined that the Plaintiff was not disabled. The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> (2) The claimant has not engaged in substantial gainful activity since April 2, 2014, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> (3) The claimant has the following severe impairments: degenerative disc disease; degenerative joint disease; and obesity (20 C.F.R. 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except: occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.
>
> (6) The claimant is capable of performing past relevant work as a manager of a fast food restaurant (DOT #185.137-010; SVP 5; light). This work does not require performance of work-related activities

> precluded by the claimant's residual capacity (20 C.F.R. 404.1565).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from April 2, 2014 through the date of this decision (20 C.F.R. 404. 1520(f)).

[ECF #10-2, pp. 19-26]. The Magistrate Judge recommends affirming the decision of the Commissioner finding that Plaintiff is not disabled. Plaintiff raised several objections to the R&R including the following: (1) the RFC analysis does not properly account for Plaintiff's severe impairments; (2) the ALJ's analysis of opinion evidence is in error; and (3) the ALJ failed to properly consider Plaintiff's credibility.

## Standard of Review

### I. Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

3

2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

4

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1).

Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents him from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

6

bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff raises several objections to the recommendation that the ALJ's decision be affirmed. Plaintiff objects to the ALJ's Residual Functional Capacity ("RFC") analysis, the weight given to several treating physicians' opinions, and the assessment of Plaintiff's own testimony regarding his symptoms. Plaintiff argues that the ALJ's analysis of the RFC does not include all of the evidence reflecting his issues with neuropathy and his use of a cane, and further, that the ALJ does not build a "logical bridge" between the evidence related to neuropathy and ultimately, the RFC determination. Plaintiff further argues that the opinions of treating physicians Dr. David Hong, Dr. William Mills, and Dr. Michael McCaffrey, do not support the ALJ's RFC determination that he could perform light work. Finally, Plaintiff argues that the ALJ's decision is in error because he has provided evidence that he was diagnosed with neuropathy, and that he actually suffered from functional limitations as a result of this neuropathy. Thus, Plaintiff argues that it was error to find that his limitations were not disabling.

7

Plaintiff argues that the ALJ failed to properly consider the opinion evidence of the treating physicians in this case. After reviewing the ALJ's decision, this Court is remanding this matter back to the ALJ to conduct a thorough analysis of the treating physicians' opinions pursuant to the Social Security regulations. As noted by the Magistrate Judge, because this claim and subsequent decision by the ALJ were filed prior to March 27, 2017, the date upon which the regulations were amended regarding weight given to medical opinions, this Court will consider whether the ALJ's decision comports with the regulations in effect at the time the ALJ rendered her decision.[3] An ALJ must consider and weigh all medical opinions included in a claimant's case. 20 C.F.R. § 404.1527(c). Moreover, an ALJ must give the opinion of a treating physician controlling weight if that opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2). Factors to consider when weighing medical opinions include whether the source examined or treated a claimant, the length and frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion to the record as a whole, and whether the source is a specialist. 20 C.F.R. § 404.1527(c). In considering the appropriate weight to give a treating physician's opinion, an ALJ must give good reasons in explaining the weight given such an opinion. 20 C.F.R. § 404.1527(c)(2). In weighing this evidence, an ALJ must avoid substituting his own medical judgment for that of the treating physician or physicians where the opinions of the treating physicians are supported by medical evidence. *See Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *7 (S.D. Ohio 2011); *See generally Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd

---

[3] For claims filed after March 27, 2017, the amended regulations are in effect. These new regulations, found at 20 C.F.R. §416.920c provide that the Social Security Administration will not "defer" to any medical opinions, including those from medical sources.

Cir. 1985) (noting that the ALJ improperly discredited the opinions of a treating doctor by determining the opinion was contrary to the objective medical evidence in the file). In *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985), the court noted that the ALJ improperly discredited the opinions of a treating doctor when the ALJ determined that the opinions were contrary to the objective medical evidence in the file. *Id; see also Ledbetter v. Colvin*, No. 2:14-100-TMC, 2015 WL 4878712, at *7 (D.S.C. Aug. 14, 2015) (reversing and remanding a case where the Magistrate Judge found that "what stands out in this case is the lack of **any** accepted medical opinion"). (emphasis in original).

Plaintiff argues that the ALJ afforded "little weight" to three of his treating physicians' opinions, despite the fact that the opinions were clearly supported by the records and objective testing.[4] This Court agrees that the ALJ improperly discredited the opinions of three treating physicians by simply finding that the opinions are inconsistent with her review of the treatments notes without conducting a meaningful analysis capable of review. Here, the ALJ determined that although three of the opinions were from treating physicians which were generally consistent with each other, the record nonetheless did not support these all seemingly similar positions. The ALJ's discussion of the treating physicians' medical records and notes appear to focus on isolated statements within Plaintiff's medical records in finding that the opinions appear inconsistent with these statements within the record. With respect to Dr. Hong's opinion, he opined that Plaintiff could not sit and stand for longer than fifteen minutes at a time, could not work during the day, could only lift five pounds occasionally, and could not bend, stoop, or balance. As noted in the decision, Dr. Hong treated Plaintiff on a routine basis for medication management related to several of his ailments. In January of 2016, Dr. Hong filled out a medical statement based on a review of the medical history and treatment notes. The ALJ afforded little

---

[4] The ALJ also afforded no weight to the opinion of treating physician Dr. Lux, but Plaintiff does not object to the analysis of that opinion.

9

weight to this opinion, finding that Dr. Hong's own treatment notes and other evidence did not support the opinions in his statement regarding his physical limitations because of relatively benign test results and because Dr. Hong indicated that he did not perform disability testing. However, in reviewing any other medical opinion, the ALJ did not discredit other opinions based on whether or not the physician conducted disability testing.

The ALJ further considered the opinion of Dr. Mills with Coastal Orthopedics. His medical notes reveal that Plaintiff had facet arthritis at L4-L5 and L5-S1, as well as a positive electromyography ("EMG") study. The ALJ noted that Dr. Mills opined that Plaintiff had limited motion in his spine, severe burning or painful dysesthesia, needed to change position every two hours and had the inability to ambulate effectively. Moreover, the ALJ indicates within the decision that Plaintiff had objective tests revealing degenerative joint disease, and disc degeneration. Nonetheless, the ALJ afforded Dr. Mills' opinion little weight because she found that Plaintiff reportedly responded well to the use of injections and did not result in such a loss of strength that Plaintiff would not be able to ambulate effectively. This Court is unable to determine what medical records the ALJ relied upon to support her determination that Plaintiff could ambulate effectively, particularly since the ALJ noted that Dr. Mills had prescribed Plaintiff an equalizer boot, injections, a TENS unit, and medication in an attempt to treat Plaintiff's orthopedic problems. Moreover, as noted by the ALJ, Plaintiff used a cane, though not on a continual basis.

Finally, Dr. McCaffrey opined that Plaintiff could not work or stand, lift any weight, bend, stoop, balance, perform fine or gross manipulation, work around dangerous equipment, or operate a motor vehicle. Dr. McCaffrey also indicated that Plaintiff suffered from significant peripheral neuropathy resulting in disorganization of motor function. The ALJ gave this opinion little weight and

noted that this physician's opinion was inconsistent with his previous physical examination of Plaintiff stating that Plaintiff has normal motor functioning. However, Dr McCaffrey had also treated Plaintiff for lower leg numbness and an unsteady gait and diagnosed Plaintiff with unspecified idiopathic peripheral neuropathy. Further, the ALJ noted that Plaintiff testified he was waiting approval for plasmaphoresis for neuropathy with Dr. McCaffrey. The ALJ also stated that she discredited this opinion because Plaintiff testified he could perform a "wider array of activities" than as determined by Dr. McCaffrey. However, Plaintiff actually testified that the limitation of activities was "a little bit inaccurate" and that he was able to do a "little bit" of those movements, but he did not necessarily discredit Dr. McCaffrey's medical findings.

In reviewing the ALJ's decision, this Court questions the fact that three of Plaintiff's treating physicians' opinions were discounted with a rather succinct analysis, particularly in light of the fact that the ALJ affords more weight to the state agency medical consultants, stating only that they should be afforded "some weight" because they are "supported by the objective medical evidence of record." These treating physicians's opinions are all generally consistent with one another. As Plaintiff further points out, the state agency consultants gave opinions prior to the abnormal EMG study that suggest he suffers from mononeuritis. What further concerns this Court is the fact that the only physician afforded "some weight" by the ALJ was a physician who checked one box on a standard Disability Determination Services form indicating that Plaintiff was capable of handling "monthly benefits." [ECF #10-2, p. 24]. Finally, this Court cannot determine whether several of the factors listed within the regulations, such as length of treatment time and specialization of the treating physician, were considered in discrediting these opinions. Thus, the Court cannot ascertain whether the ALJ properly analyzed all the relevant factors and considered all medical evidence of record in rejecting the opinions

of the treating physicians in this matter. Accordingly, this Court is remanding this matter back to the Commissioner, as this Court is unable to conclude that substantial evidence supports the findings of the ALJ based on the reasons given for rejecting three medical opinions in the record.

As to Plaintiff's remaining objections, because this Court is remanding this matter back to the Commissioner for further findings consistent with this opinion, this Court finds that the ALJ should reconsider the RFC determination, as well as reconsider Plaintiff's testimony regarding his subjective symptoms and his ability to perform certain functions, to the extent these determinations rely upon the weight given the treating physician opinions. This is particularly important because this Court acknowledges that the RFC determination is likely based, in part, upon the ALJ's analysis of the physician's opinions. Accordingly, this Court is remanding this case for further fact finding and analysis consistent with this Order.

## **Conclusion**

This Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Defendant's objections to the R & R, Plaintiff's response to those objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge. [ECF #17], and remands this case for further fact finding consistent with this Order. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is remanded to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  
August 21, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge